# United States Court of Appeals
## For the First Circuit

No. 20-1607

AIRES DANIEL BENROS DA GRACA,

Petitioner,

v.

MERRICK B. GARLAND,[*] Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Thompson and Lipez, <u>Circuit Judges</u>,
and Torresen,[**] <u>District Judge</u>.

<u>Robert F. Weber</u>, with whom <u>Randy Olen</u> was on brief, for petitioner.
<u>Melissa K. Lott</u>, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom <u>Brian Boynton</u>, Acting Assistant Attorney General, and <u>Erica B. Miles</u>, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General William P. Barr as the respondent.

[**] Of the District of Maine, sitting by designation.

January 18, 2022

**TORRESEN**, <u>District Judge</u>. Aires Daniel Benros Da Graca petitions for review of a decision of the Board of Immigration Appeals (the "Board") affirming his order of removal and denying his requests for cancellation of removal and voluntary departure. Because we find that a conviction under Rhode Island General Laws ("RIGL") § 31-9-1 is not categorically a theft offense, we grant the petition for review, vacate the decision below, and remand for further proceedings.

## I.  <u>Background</u>

Petitioner Da Graca is a 45-year-old citizen of Cape Verde who came to the United States as a lawful permanent resident in 1989, at the age of thirteen.  On September 26, 2016, Da Graca was convicted in the Superior Court in Providence, Rhode Island, of driving a motor vehicle without consent of the owner or lessee in violation of RIGL § 31-9-1.  The full text of RIGL § 31-9-1 reads as follows:

> Any person who drives a vehicle, not his or her own, without the consent of its owner or lessee, and with intent temporarily to deprive the owner or lessee of his or her possession of the vehicle, without intent to steal the vehicle, is guilty of a felony.  The consent of the owner or lessee of a vehicle to its taking or driving shall not in any case be presumed or implied because of the owner's or lessee's consent on a prior occasion to the taking or driving of that vehicle by the same or a different person.  Any person who assists in, or is a party or accessory to or an accomplice in any unauthorized taking or

- 3 -

driving, is guilty of a felony. Any person convicted of a violation of this section shall be fined not more than five thousand dollars ($5,000) or imprisoned for a term of not more than five (5) years, or both.

Da Graca received a five-year suspended sentence and five years of probation.

On September 16, 2019, the Department of Homeland Security initiated removal proceedings against Da Graca by serving him with a Notice to Appear ("NTA"). The NTA charged Da Graca with removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony theft offense as defined by the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(G).

At the Immigration Court in Boston, Da Graca argued that he was eligible for cancellation of removal and voluntary departure on the ground that a conviction under RIGL § 31-9-1 did not constitute an aggravated felony theft offense.

In an oral decision issued on December 12, 2019, the Immigration Judge determined that Da Graca's conviction for driving without consent of the owner was categorically a theft offense, thus rendering Da Graca ineligible for cancellation of removal and voluntary departure. The Judge reasoned that although RIGL § 31-9-1 does not require an intent to steal (i.e., an intent to totally and permanently deprive the owner of the rights and benefits of ownership), the Board had already established that even a temporary taking qualifies as aggravated felony theft.

- 4 -

The Board adopted and affirmed the decision of the Immigration Judge. The Board reiterated that even temporary deprivations of the rights and benefits of ownership meet its definition of theft. Moreover, while the Board recognized that takings that entail only a "de minimis deprivation of ownership interests" do not meet the standard for a theft offense, it determined that Da Graca had failed to "identify any Rhode Island court decisions which support a conclusion that there is a realistic probability that [RIGL] § 31-9-1 is applied to temporary takings of vehicles which entail only a de minimis deprivation of ownership interests."

The Board distinguished its holding from that of the Fourth Circuit in Castillo v. Holder, 776 F.3d 262 (4th Cir. 2015), where the court had found that a conviction under a nearly identical Virginia unauthorized use statute did not constitute an aggravated felony theft offense. The Board explained that, in Castillo, the Fourth Circuit had found that there was a realistic probability the Virginia statute would apply to de minimis conduct outside the Board's definition of theft after undertaking an "extensive review" of Virginia case law. By contrast, Da Graca was not able to point to any cases in which Rhode Island had prosecuted de minimis deprivations under RIGL § 31-9-1. Thus, the Board determined that Da Graca failed to show a realistic

probability that RIGL § 31-9-1 encompasses de minimis deprivations of ownership interests.

Da Graca timely filed this petition for review.

## II.  **Standard of Review**

Board determinations must be upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003) (internal quotation marks omitted). We review legal issues de novo, "albeit with deference accorded to the [Board's] reasonable interpretation of statutes and regulations falling within its bailiwick." Lecky v. Holder, 723 F.3d 1, 4 (1st Cir. 2013) (internal quotation marks omitted). No deference is given to the Board's interpretation of state law. Id.

### III. **Analysis**

The primary issue[1] before us is whether Da Graca has been convicted of an aggravated felony theft offense.[2]  To make that determination, we use the categorical approach.  De Lima v. Sessions, 867 F.3d 260, 262 (1st Cir. 2017).  The goal of the categorical analysis is to ascertain whether the state criminal statute at issue fits within the generic definition of the corresponding aggravated felony or whether it instead encompasses

---

[1]     Da Graca makes four arguments on appeal.  First, Da Graca argues that his conviction under RIGL § 31-9-1 does not constitute an aggravated felony theft offense because the statute encompasses de minimis deprivations of ownership interests, which are outside the scope of the generic definition of theft.  Second, he argues that RIGL § 31-9-1 is overbroad because it extends liability to accessories and, as such, the statute may be considered divisible and subject to the modified categorical approach.  As best we can tell from the administrative record before us, this is the first time Da Graca makes this particular argument, and it is therefore not properly before us. See Paiz-Morales v. Lynch, 795 F.3d 238, 244 n.4 (1st Cir. 2015) ("[A]rguments not raised before the BIA are waived due to a failure to exhaust administrative remedies." (citation and internal quotation marks omitted)).  Third, he argues that the rule of lenity should apply.  This argument is also raised for the first time before us and is therefore also waived. See id.  Finally, Da Graca argues that the government failed to establish his removability by clear and convincing evidence.  This argument goes the way of the preceding two--waived for failure to raise it to the Immigration Judge or Board.

[2]     The Immigration and Nationality Act authorizes the deportation of, and renders ineligible for cancellation of removal and voluntary departure, "[a]ny alien who is convicted of an aggravated felony," 8 U.S.C. § 1227(a)(2)(A)(iii) (deportable aliens); id. § 1229b(a)(3) (cancellation of removal); id. § 1229c(a)(1) (voluntary departure), such as a "theft offense . . . for which the term of imprisonment [is] at least one year," id. § 1101(a)(43)(G).

more criminal conduct than the generic federal definition. See id. at 263. Under the categorical approach, we must "look[] only to the statutory definition[] of the . . . offense[], and not to the particular facts underlying th[e] conviction[]." Taylor v. United States, 495 U.S. 575, 600 (1990); see also Moncrieffe v. Holder, 569 U.S. 184, 190 (2013) (explaining that the facts underlying the noncitizen's conviction are "quite irrelevant" under the categorical approach (citation omitted)).

Here, we must compare RIGL § 31-9-1 to the generic definition of "theft offense." The parties agree that the generic definition of "theft offense" is found within Matter of V-Z-S, 22 I. & N. Dec. 1338 (B.I.A. 2000). We have previously accepted the definition that Matter of V-Z-S outlined for what constitutes a generic theft offense, so that definition controls here. See Lecky, 723 F.3d at 5-6.

A.  **Comparing Generic Theft with RIGL § 31-9-1**

In Matter of V-Z-S, the Board considered a California unauthorized use statute that, like RIGL § 31-9-1, criminalized the unauthorized taking of a vehicle with the intent to deprive the owner of title or possession.[3] See 22 I. & N. Dec. at 1349.

---

[3]   The California statute reads as follows: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an

- 8 -

In its analysis, the Board rejected the petitioner's argument that "theft offense" only encompassed permanent takings and instead concluded that a "theft offense" was "a taking of property . . . whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." Id. at 1346. The Board clarified, however, that "[n]ot all takings of property . . . will meet this standard because some takings entail a de minimis deprivation of ownership interests." Id. The Board specifically cited "glorified borrowing"[4] and "joyriding" as examples of de minimis conduct that would not qualify as a theft offense under the generic definition. See id. at 1346, 1349.

We can glean from Matter of V-Z-S that to qualify as a categorical theft offense, a statute must meet three requirements: (1) it must entail a taking of property, (2) it must include criminal intent to deprive, and (3) it must exclude de minimis

accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense . . . ." Cal. Veh. Code § 10851(a).

[4] Matter of V-Z-S did not define the term "glorified borrowing," except to say that glorified borrowings do not "involve a significant impairment of ownership rights." 22 I. & N. Dec. at 1349. In Castillo, the Fourth Circuit interpreted glorified borrowing to include instances in which "the defendant's use of property deviates only slightly from the specific scope of consensual use, resulting in an insignificant effect on ownership interests." 776 F.3d at 269. Because we find that RIGL § 31-9-1 is broad enough to encompass joyriding, a type of de minimis conduct, we need not speculate here about the meaning of glorified borrowing.

- 9 -

deprivations of ownership interests. Analyzing the California unauthorized use statute in light of this definition, the Board in Matter of V-Z-S found that the statute was not overbroad because it met all three of these conditions, including the requisite third component of theft, what we may think of as the "but not de minimis deprivations" factor. Importantly, while the California unauthorized use statute did not explicitly exclude de minimis conduct from its scope, the Board concluded that such an exclusion could be inferred from the fact that a separate California statute covered joyriding.[5] See id. at 1348-49. Thus, the California unauthorized use statute, viewed in the context of California's statutory structure, matched the Board's definition for what constitutes a generic theft offense.

The Board's reasoning in Matter of V-Z-S demonstrates that, when there is a statute that appears to track the first two requirements of the generic definition of theft, it will be plainly overbroad unless there are either explicit textual clues, or implicit contextual ones (such as separate provisions within the state statutory scheme that cover other kinds of takings), to

_____

[5]     The Board explained that, at the time of the petitioner's conviction, the joyriding statute stated in relevant part that: "Any person who shall, without the permission of the owner thereof, take any automobile, bicycle, motorcycle, or other vehicle or motorboat or vessel, for the purpose of temporarily using or operating the same, shall be deemed guilty of a misdemeanor . . . ." Matter of V-Z-S, 22 I. & N. Dec. at 1348 (quoting Cal. Penal Code § 499b (1995)).

- 10 -

indicate that the statute does not reach de minimis conduct. We employed this methodological approach when we clarified in United States v. Burghardt that overbreadth is found where the text of the state statute does not explicitly exclude conduct outside the bounds of the federal generic definition, so long as no other statutory provision narrows the statute's application. See 939 F.3d 397, 407-08 (1st Cir. 2019).

Burghardt concerned a New Hampshire drug statute prohibiting the "offer" of controlled substances. Id. at 406-07. The defendant argued that that statute criminalized both "bona fide" and "mere" offers to sell prohibited drugs, that federal law criminalized only "bona fide" offers, and that, if the statute encompassed "mere" offers, it would be overbroad. Id. at 407. While we ultimately determined that the statute was a categorical match to the generic federal offense, we did so only after finding that another provision in the same statutory scheme applied to mere offers and therefore would have been rendered superfluous if the statute at issue were read so broadly. See id. at 407-08. Burghardt underscores that overbreadth occurs where a statute, by its own text and as read in the context of the larger statutory scheme, does not preclude application to conduct outside the federal definition.

Other circuits have also found statutes overbroad due to a lack of textual or contextual clues indicating that a narrower

- 11 -

reading of the statute was appropriate.  In <u>Gonzalez</u> v. <u>Wilkinson</u>, for example, the Eighth Circuit found that a Florida marijuana statute was overbroad because it, unlike the federal definition, did not explicitly exclude "seeds or mature stalks from its definition of marijuana."  990 F.3d 654, 658, 661 (8th Cir. 2021).

In Da Graca's case, the Board was correct that RIGL § 31-9-1 meets the first two requirements of <u>Matter of V-Z-S</u>'s definition of theft, as the statute (1) <u>entails</u> the unauthorized taking of a vehicle and (2) <u>includes</u> an intent to deprive.  What the Board failed to consider, however, was the fact that RIGL § 31-9-1 is, on its face, missing the requisite third component, the "but not de minimis deprivations" factor.

As the Board did in <u>Matter of V-Z-S</u>, we must consider RIGL § 31-9-1 in the context of Rhode Island's statutory structure. When we do, a key difference between this case and <u>Matter of V-Z-S</u> emerges.  Unlike in <u>Matter of V-Z-S</u>, where a separate joyriding statute helped limit the construction of the California unauthorized use statute, <u>see</u> 22 I. & N. Dec. at 1348, here there is no relevant Rhode Island provision that helps us read RIGL § 31-9-1 to exclude de minimis takings.[6]  Thus, in the same way that

_____

[6]    Section 31-9-1 is located in Title 31, captioned "Motor and Other Vehicles," of the RIGL.  Chapter 9 of Title 31 is devoted to "Theft and Related Offenses."  We can find no other statute in this Chapter or elsewhere in the Rhode Island statutory scheme that could apply to the type of conduct that the Board characterized as a de minimis deprivation, such as glorified

- 12 -

Matter of V-Z-S interpreted the existence of a separate California joyriding statute to cabin the breadth of the California unauthorized use statute, we interpret the lack of a separate Rhode Island joyriding statute to be evidence that the conduct prohibited by RIGL § 31-9-1 includes joyriding.

There is additional evidence that RIGL § 31-9-1 covers joyriding. Most notably, in a case from 1986, the Rhode Island Supreme Court referred to a guilty plea under an earlier version of RIGL § 31-9-1 as a conviction for "criminal misdemeanor joyriding." Perry v. Rent-a-Ride, Inc., 505 A.2d 424, 425 (R.I. 1986) (internal quotation marks omitted). And the earlier version of the statute mentioned in Perry is nearly identical to the current one.[7] That the ultimate arbiter of Rhode Island law

_____

borrowing or joyriding. There is a statute setting a misdemeanor penalty for misappropriation of a vehicle, but it concerns "vehicle[s] other than a motor vehicle" and looks to be a throwback to horse and buggy days. See RIGL § 11-44-7 (prohibiting misappropriation of non-motor vehicles, boats, and animals).

[7] The original version of Rhode Island's unauthorized use of a motor vehicle statute was enacted in 1950. The elements were identical to the current version, the only relevant difference being that the original offense was a misdemeanor. See 1950 R.I. Pub. Laws 529. In 1986, the Rhode Island legislature amended RIGL § 31-9-1 by changing it from a misdemeanor to a felony, but it did not make any other relevant substantive changes to the statute. See 1986 R.I. Pub. Laws 471. To put it another way, the felony statute criminalized identical conduct as the misdemeanor statute, just with potentially harsher consequences.

We further note that this change in the Rhode Island legislature's classification of the severity of the crime supports our analysis. Rhode Island distinguishes misdemeanors from felonies by their maximum allowable punishments. See RIGL § 11-

- 13 -

characterized an earlier (but nearly identical) version of RIGL § 31-9-1 as prohibiting joyriding is strong evidence that the statute does in fact criminalize that conduct.

In sum, RIGL § 31-9-1 is overbroad. Unlike the Board's definition of theft, RIGL § 31-9-1 does not explicitly exclude "de minimis deprivation[s] of ownership interests," Matter of V-Z-S, 22 I. & N. Dec. at 1346, from its scope. Nor is there any other Rhode Island statute akin to the California joyriding statute discussed in Matter of V-Z-S that would narrow the applicability of RIGL § 31-9-1. Therefore, because it includes de minimis conduct that the Board concluded is not a part of generic theft, RIGL § 31-9-1 is not a categorical match with the generic definition of theft articulated in Matter of V-Z-S.

## B. The Actual Case Requirement

Despite this apparent disconnect between RIGL § 31-9-1 and the Board's definition of theft offense, the Board in Da Graca's case determined that to prove the statute's overbreadth, the Petitioner was required to identify actual cases in which Rhode Island had enforced the statute against de minimis deprivations of ownership interests. Da Graca contests the Board's imposition of

---

1-2. But because RIGL § 31-9-1 does not have a mandatory minimum penalty, judges retain discretion to punish minor violations of the statute with the same penalties as if the statute were a misdemeanor. As a result, this change provides sentencing flexibility for more serious violations of the statute, rather than limiting the breadth of conduct encompassed by the statute.

an actual case requirement and argues that he "need not necessarily proffer specific examples of Rhode Island prosecutions in order to establish a 'realistic probability' that the state would apply its statute to conduct that falls outside the generic definition of a crime."  We agree with Da Graca.

This "realistic probability" language comes from Gonzales v. Duenas-Alvarez, 549 U.S. 183 (2007).  In Duenas-Alvarez, the Supreme Court cautioned that determining whether a state statute is overbroad "requires more than the application of legal imagination to a state statute's language.  It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."  549 U.S. at 193.

In its decision affirming the immigration judge's denial of Da Graca's application for relief from removal, the Board appeared to read into the Duenas-Alvarez "realistic probability" test an actual case requirement, under which a petitioner must identify actual cases of enforcement against conduct outside the generic definition of a crime to show a statute is overbroad.  The Board was in error.  This court has already established that there is no actual case requirement where a statute is facially broader than its generic counterpart.

In Swaby v. Yates, 847 F.3d 62 (1st Cir. 2017), we held that, at least where a state statute is "plainly" overbroad, a

petitioner need not produce an actual case to satisfy the realistic probability test.[8]   847 F.3d at 66.   While the Swaby court acknowledged Duenas-Alvarez's "sensible caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes," it maintained that such caution was inapplicable where "[t]he state crime at issue clearly does apply more broadly than the federally defined offense."   Id.   The court explained that Duenas-Alvarez itself supported this approach, as the case "made no reference to the state's enforcement practices" but rather "discussed only how broadly the state criminal statute applied."   Id.; see also Gonzalez, 990 F.3d at 660 ("[T]he focus of the realistic probability inquiry is on how a state statute might be applied.").

Supreme Court cases decided since Duenas-Alvarez provide further support for Swaby's disavowal of an actual case requirement.   In Mellouli v. Lynch, 575 U.S. 798 (2015), for

_____

[8]      Several other circuits have also concluded that there is no actual case requirement where the statute itself is overbroad. See, e.g., Hylton v. Sessions, 897 F.3d 57, 63 (2d Cir. 2018); United States v. Aparicio-Soria, 740 F.3d 152, 157-58 (4th Cir. 2014) (en banc); Gonzalez, 990 F.3d at 660-61; Ramos v. U.S. Att'y Gen., 709 F.3d 1066, 1071-72 (11th Cir. 2013); see also United States v. Castillo-Rivera, 853 F.3d 218, 241 (5th Cir. 2017) (en banc) (Dennis, J., dissenting) ("Thus, the majority opinion's unqualified rule that a defendant must in all cases point to a state court decision to illustrate the state statute's breadth misconstrues Duenas-Alvarez, directly conflicts with Taylor, and ignores both our established circuit precedent and the holdings of several of our sister circuits.").

example, the Court held that a Kansas drug statute was overbroad on its face without requiring the petitioner to identify cases in which Kansas had actually prosecuted possession of drugs not listed in the federal schedules.  See 575 U.S. at 798-813.  Similarly, in Mathis v. United States, 136 S. Ct. 2243 (2016), the Court determined that an Iowa burglary statute was overbroad based solely on its text, without reference to any supporting state case law demonstrating that the statute had actually been enforced in an overbroad manner.  See 136 S. Ct. at 2251.

In Da Graca's case, the Board cited the Fourth Circuit's decision in Castillo as support for its conclusion that overbreadth can only be established through case law.  But whether Castillo provides support for an actual case requirement is immaterial.  Here, Swaby, not Castillo, is controlling.  If RIGL § 31-9-1 is overbroad on its face, then Da Graca need not proffer an actual case to demonstrate a realistic probability of RIGL § 31-9-1's overbreadth.[9]

As we explained earlier, § 31-9-1 is plainly overbroad: de minimis conduct is not excluded from its scope, and it is thus not a categorical match to the generic definition of theft.  See

---

[9]     We also note that it is unsurprising that there would be little case law involving prosecutions of minor instances of joyriding, particularly in a small state like Rhode Island.  It seems manifestly unfair to have a petitioner's fate depend on such vagaries as a local prosecutor's charging decisions or how willing a state court judge is to write an opinion in a particular matter.

<u>Gonzalez</u>, 990 F.3d at 661 (finding that a statute was overbroad because it did not explicitly exempt conduct outside the federal definition); <u>cf.</u> <u>Swaby</u>, 847 F.3d at 66 (warning that a state criminal statute should not "be treated as if it is narrower than it plainly is").  Moreover, in contrast to <u>Matter of V-Z-S</u> and <u>Burghardt</u>,[10] where separate statutory provisions covered conduct outside the scope of the federal generic definition of the offense, no other Rhode Island statute covers de minimis vehicle takings, like joyriding.[11]

We can properly infer from these facts, without relying on our "legal imagination," <u>Duenas-Alvarez</u>, 549 U.S. at 193, that RIGL § 31-9-1 is overbroad.  The text of RIGL § 31-9-1 does not exclude de minimis conduct, nor does another Rhode Island statute narrow the reach of the law to only more serious property offenses.

_____

[10]  We acknowledge that, in <u>Burghardt</u>, we discussed the appellant's failure to cite an actual case to support his argument that N.H. Rev. Stat. § 318-B:2(I) covered "mere" offers.  <u>See</u> 939 F.3d at 408–09.  However, we did so only after concluding, based on its statutory text and its place in the broader statutory scheme, that the law was likely a categorical match.  <u>Id.</u>  Thus, in <u>Burghardt</u>, the actual case analysis was employed as a last-chance opportunity for Burghardt to resolve any lingering ambiguity about the statute's reach.  It is unnecessary to take this added step in Da Graca's case, because--as already discussed--an analysis of the text and structure of § 31-9-1 demonstrates that it is plainly overbroad.

[11]  Furthermore, as explained earlier, Rhode Island's highest court has, at least in passing, identified a case in which RIGL § 31—9-1 was used to prosecute what that court characterized as joyriding.  <u>See</u> <u>Perry</u>, 505 A.2d at 425.

- 18 -

Thus, Da Graca's conviction under RIGL § 31-9-1 does not constitute a categorical aggravated felony theft offense, and he need not identify actual Rhode Island case law to demonstrate the statute's overbreadth.

### IV. Conclusion

For these reasons, we **grant** the petition for review, **vacate** the Board's opinion, and **remand** for reconsideration.