# United States Court of Appeals
## For the First Circuit

No. 22-1383

GERARDO A. PORTILLO,

Petitioner,

v.

US DEPARTMENT OF HOMELAND SECURITY,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Montecalvo and Thompson, <u>Circuit Judges</u>,
and Carreño-Coll,* <u>District Judge</u>.

Jennifer Klein, with whom Committee for Public Counsel Services, Susan B. Church, Demissie & Church, and Kathleen M. Gillespie, were on brief, for petitioner.
Alexander J. Lutz, Trial Attorney, Office of Immigration Litigation, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Jennifer J. Keeney, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

May 30, 2023

---

* Of the District of Puerto Rico, sitting by designation.

**MONTECALVO, Circuit Judge.** Gerardo A. Portillo petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming his order of removal and denying his application for adjustment of status. Because we find that a conviction under Massachusetts General Laws ("MGL") ch. 269, § 11C is not categorically a firearm offense as defined by 8 U.S.C. § 1227(a)(2)(C), we grant the petition for review, vacate the decision below, and remand for further proceedings.

## I. Background

Petitioner Portillo, a citizen of El Salvador, entered the United States on a B-2 temporary visitor visa when he was less than a year old. After more than a decade residing in the United States, in June 2003, he adjusted his status to lawful permanent resident.

On July 9, 2014, Portillo pleaded guilty in Massachusetts state court to assault and battery upon a child causing bodily injury, in violation of MGL ch. 265, § 13J(b); three counts of possession of a firearm without a firearm identification ("FID") card, in violation of MGL ch. 269, § 10(h); and -- of particular relevance here -- defacing or receiving a firearm with a defaced serial number, in violation of MGL ch. 269, § 11C. MGL ch. 269, § 11C provides:

> Whoever, by himself or another, removes, defaces, alters, obliterates or mutilates in any manner the serial number or identification

- 2 -

number of a firearm, or in any way participates therein, and whoever receives a firearm with knowledge that its serial number or identification number has been removed, defaced, altered, obliterated or mutilated in any manner, shall be punished by a fine of not more than two hundred dollars or by imprisonment for not less than one month nor more than two and one half years.

More than two and a half years after Portillo's conviction, on April 4, 2017, the Department of Homeland Security ("DHS") initiated removal proceedings against Portillo.[1] The Notice to Appear charged Portillo with removal pursuant to 8 U.S.C. § 1227(a)(2)(C) based solely on his Massachusetts state court conviction for "[p]ossession of a [f]irearm with [a] [d]efaced [n]umber, in violation of [MGL ch. 269, § 11C]." It made no mention of Portillo's other convictions.

The Immigration and Nationality Act ("INA") permits the removal of a noncitizen convicted of "[c]ertain firearm offenses." 8 U.S.C. § 1227(a)(2)(C). More specifically, it states:

Any [noncitizen] who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable.

---

[1] Portillo's removal proceedings have a lengthy and complicated procedural history. We limit our discussion of the facts and procedural history to that necessary to understand our decision.

Id.  Section 921(a)(3) of Title 18, which defines "firearm," explicitly excludes antique firearms -- that is, "any firearm . . . manufactured in or before 1898" and certain replicas -- from its definition.  See 18 U.S.C. § 921(a)(3), (16).

Portillo moved to terminate the removal proceedings against him, arguing that a conviction under MGL ch. 269, § 11C did not qualify as a removable firearm offense.  More specifically, he contended that the Massachusetts statute defines firearm more broadly than section 921(a) because the Massachusetts statute lacks an exception for antique firearms.[2]

The Immigration Judge ("IJ") ultimately determined that Portillo's conviction was categorically a firearm offense and sustained the removability charge.  The IJ reasoned that although the Massachusetts statute lacks an explicit exception for antique firearms, "Massachusetts allows a defendant to raise the affirmative defense of an antique firearm."  The IJ therefore held that for Portillo to succeed he would need to establish a

_____

[2] Before the Immigration Judge and the BIA, Portillo asserted that MGL ch. 269, § 11C was overbroad for a second reason: Massachusetts's definition of firearm encompasses an air-propelled firearm, such as a BB gun, whereas its federal analog does not.  Portillo has not advanced this argument on appeal.  We therefore deem it waived and do not address it.  See Silva v. Gonzales, 455 F.3d 26, 28 (1st Cir. 2006) ("[L]itigants have 'an obligation to spell out [their] arguments squarely and distinctly, or else forever hold [their] peace.'" (alterations in original) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990))).

"realistic probability" that Massachusetts would apply MGL ch. 269, § 11C to prosecute conduct involving an antique firearm. The IJ concluded that Portillo had failed to do so.

Portillo then applied to adjust his status based on his marriage to a U.S. citizen and sought a waiver of inadmissibility. On November 19, 2021, the IJ denied those applications, reaffirmed his previous determination that Portillo's conviction under MGL ch. 269, § 11C rendered Portillo removable, and ordered that Portillo be removed to El Salvador.

Portillo appealed the IJ's November 19 decision to the BIA. On April 25, 2022, the BIA affirmed the IJ's decision and dismissed the appeal. Like the IJ, the BIA concluded that although the Massachusetts statute does not contain an explicit exception for an antique firearm, a defendant in Massachusetts may raise the antiquity of a firearm as an affirmative defense. And it agreed with the IJ's determination that even if MGL ch. 269, § 11C was overbroad -- even facially so -- because it lacked an explicit antique firearm exception, the Supreme Court's decision in Moncrieffe v. Holder, 569 U.S. 184 (2013), requires Portillo to establish a "realistic probability" that Massachusetts would apply the statute to prosecute offenses involving antique firearms. Because Portillo did not direct the BIA to any cases demonstrating the use of MGL ch. 269, § 11C to prosecute conduct involving an antique firearm, the BIA concluded that Portillo did not establish

a "realistic probability" that the statute applied to antique firearms and that he was removable under 8 U.S.C. § 1227(a)(2)(C).

Portillo timely filed this petition for review and moved to stay his removal. We granted Portillo's motion for a stay and now address his petition for review.

## II. Standard of Review

When both the IJ and the BIA have issued an opinion, we review the BIA's decision as well as any "aspects of the IJ's opinion" adopted by the BIA. Touch v. Holder, 568 F.3d 32, 37 (1st Cir. 2009). "We review legal issues de novo," affording deference to the BIA's reasonable interpretations of the INA and its related regulations. Da Graca v. Garland, 23 F.4th 106, 109 (1st Cir. 2022). But we give no deference to the BIA's "reading of an underlying [state] criminal statute (as to which it has no expertise)." Patel v. Holder, 707 F.3d 77, 79 (1st Cir. 2013); see Lecky v. Holder, 723 F.3d 1, 4 (1st Cir. 2013).

## III. Discussion

The issue before us is whether a conviction for possession of a firearm with a defaced serial number, in violation of MGL ch. 269, § 11C, renders a noncitizen removable under 8 U.S.C. § 1227(a)(2)(C).

To answer that question, we employ the categorical approach. De Lima v. Sessions, 867 F.3d 260, 262-63 (1st Cir. 2017). That approach requires us to determine whether the state

offense categorically fits within the definition of the federal offense.  See id. at 263.  If the state offense sweeps more broadly and reaches more conduct than the federal offense, the two are a categorical mismatch.  See id.  In conducting this analysis, we limit our focus "to the statutory definition of the [state] offense of conviction" and do not consider "the particulars of the [noncitizen's] behavior."  Id. at 262-63 (quoting Mellouli v. Lynch, 575 U.S. 798, 805 (2015)); see also Moncrieffe, 569 U.S. at 190 (explaining that "the noncitizen's actual conduct . . . 'is quite irrelevant'" in applying the categorical approach (citation omitted)).

Our focus on the minimum conduct encompassed in the state offense, however, is not a license "to apply 'legal imagination' to the state offense."  Moncrieffe, 569 U.S. at 191 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)).  Instead, "there must be 'a realistic probability, not a theoretical possibility, that the [s]tate would apply its statute to conduct that falls outside the generic definition of a crime.'"  Id. (quoting Duenas-Alvarez, 549 U.S. at 193).  If a "state statute is 'plainly' overbroad," a realistic probability that a state will apply its statute to overbroad conduct is established.  See Da Graca, 23 F.4th at 113-14 (citation omitted).

**A. Comparing MGL ch. 269, § 11C with 8 U.S.C. § 1227(a)(2)(C)**

With this framework in mind, we evaluate whether MGL ch. 269, § 11C reaches more broadly than the federal "firearm offenses" listed within the INA. As we previously mentioned, the federal definition of firearm explicitly excludes antique firearms. On appeal, Portillo maintains that MGL ch. 269, § 11C's prohibition against defacing firearms and possessing such a firearm applies to antique firearms. DHS counters that MGL ch. 269, § 11C does not apply to antiques or that, at the very least, it is ambiguous whether MGL ch. 269, § 11C applies to antique firearms.

To determine whether MGL ch. 269, § 11C applies to antique firearms, we must examine MGL ch. 269, § 11C's text, its cross-references, and applicable Massachusetts caselaw. After doing so, we conclude that MGL ch. 269, § 11C applies to antique firearms.

We start our analysis with the text of MGL ch. 269, § 11C itself. Section 11C prohibits the "defac[ing], alter[ation], obliterat[ion] or mutilat[ion] in any manner [of] the serial number or identification number of a firearm[]" and the knowing receipt of such "a firearm." Section 11C's prohibition thus extends to anything that is "a firearm." And nothing within section 11C itself explicitly excludes antique firearms from its purview. So

on its face there is nothing limiting section 11C's application to antique firearms.

Next, we consider the cross-references. Section 11C itself does not define firearm. Instead, it directs us to use the definition of firearm in MGL ch. 140, § 121. See MGL ch. 269, § 11A ("For the purposes of" section 11C, "[f]irearm" shall mean "a firearm as defined in [MGL ch. 140, § 121], or a rifle or shotgun."). On the date of Portillo's conviction, section 121 defined firearm as follows:

> a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured; provided, however, that the term firearm shall not include any weapon that is: (i) constructed in a shape that does not resemble a handgun, short-barreled rifle or short-barreled shotgun including, but not limited to, covert weapons that resemble key-chains, pens, cigarette-lighters or cigarette-packages; or (ii) not detectable as a weapon or potential weapon by x-ray machines commonly used at airports or walk[-]through metal detectors.

MGL ch. 140, § 121.

Section 121's definition of firearm thus appears to encompass antique firearms. It defines firearm broadly and does not differentiate amongst firearms by their year of manufacture. See id. (encompassing "a pistol, revolver or other weapon of any description" (emphasis added)). And while section 121's

- 9 -

definition explicitly excludes certain weapons that might conceivably fall within its reach, such as weapons not detectable by x-ray machines, it does not explicitly exclude antiques.

But section 121 is not entirely silent on the age of a firearm either. After defining a slew of other terms, section 121 states: "[t]he provisions of sections 122 to 129D, inclusive, and sections 131, 131A, 131B and 131E shall not apply to[ ] any firearm, rifle[,] or shotgun manufactured in or prior to the year 1899."[3]

Not surprisingly, the parties take diverging views of the interplay between this statement and section 11C's cross-reference to section 121. DHS argues that section 11C's cross-reference to section 121 imports this antique firearms exemption. Portillo maintains that section 121's antique firearms exemption is inapplicable to section 11C because the exemption is

---

[3] When it applies, the Massachusetts antique exemption is broader than the federal antique exception by one year. Compare MGL ch. 140, § 121 (exempting firearms "manufactured in or prior to the year 1899"), with 18 U.S.C. § 921(a)(3), (16) (exempting firearms "manufactured in or before 1898"). The parties do not contend that this one-year difference has any bearing on our analysis. In any event, that Massachusetts's definition of an antique firearm is broader than the federal definition by one year does not defeat the categorical comparison. For a broader exemption means that the state statute criminalizes less conduct in that respect, not more. See Taylor v. United States, 495 U.S. 575, 599 (1990) ("If the state statute is narrower than the generic [offense], . . . there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of [the] generic [offense].").

limited to the sections enumerated in the exemption and conduct having a nexus to those provisions.

We agree with Portillo. Although section 121's antique firearms exemption enumerates several sections to which it applies, MGL ch. 269, § 11C is not one of them.[4] Moreover, the sections referenced in section 121's antique exemption address state rules regarding gun licensing, FID cards, and the sale of weapons and ammunition, not serial and identification numbers. See MGL ch. 140, §§ 121 to 129D, 131, 131A, 131B, 131E. And neither section 11C nor its definition section, MGL ch. 269, § 11A, mention the antique exemption contained in section 121. Rather, they mention section 121's definition of firearm, which says nothing about antiques. See MGL ch. 269, § 11A (Firearm "shall have the following meaning[:] . . . a firearm as defined in" MGL ch. 140, § 121 (emphasis added)).

To be fair, Massachusetts courts have applied the antique exemption as an affirmative defense to other provisions of

---

[4] DHS asserts that section 11C's absence from this list is of no moment, arguing that because the two sections are in different chapters it would not make sense to list section 11C here. But that has not stopped the Massachusetts legislature in the past. In fact, as discussed infra, at the time Massachusetts first criminalized the defacement of serial numbers, section 121 contained a limited antique exemption that explicitly applied to a section of the criminal code -- MGL ch. 269, § 10B. Notably, the Massachusetts legislature did not modify that exemption to include MGL ch. 269, § 11C when it first enacted MGL ch. 269, § 11C.

the criminal code despite those provisions not mentioning antiques and the antique exemption not referencing those criminal provisions.  See Commonwealth v. Jefferson, 965 N.E.2d 800, 808 (Mass. 2012); see also Commonwealth v. Kang, 72 N.E.3d 560, 563 (Mass. App. Ct. 2017).  And the BIA appears to have assumed that Massachusetts would do the same when faced with a prosecution under MGL ch. 269, § 11C.  But a closer look at the Massachusetts Supreme Judicial Court's decision in Jefferson suggests the opposite and reinforces that section 121's definition of firearm includes all firearms regardless of age.

In Jefferson, the Supreme Judicial Court recognized the antiquity of a firearm as an affirmative defense to charges under MGL ch. 269, § 10(a) and 10(n).  965 N.E.2d at 808.  Those sections criminalize, among other conduct, the carrying of a firearm without a license issued under MGL ch. 140, § 131.  See MGL ch. 269, § 10(a), (n).  And like section 11C, those sections import section 121's definition of firearm.  MGL ch. 269, § 10(a) ("Whoever, except as provided or exempted by statute, knowingly has in his possession . . . a firearm, loaded or unloaded, as defined in [MGL ch. 140, § 121] . . . .").  But those sections contain one additional cross-reference that section 11C does not: a reference to one of the provisions that also is listed in section 121's antique exemption, MGL ch. 140, § 131.  And that reference is critical.

In recognizing an affirmative defense for antique firearms to charges under MGL ch. 269, § 10(a) and 10(n), the Supreme Judicial Court focused on those sections' relationship to MGL ch. 140, § 131. It reasoned that because MGL ch. 140, § 121 exempts antiques from MGL ch. 140, § 131's licensing requirements, "a person does not need a license to carry a firearm made before 1900." Jefferson, 965 N.E. at 808. The court concluded that the carrying of an antique firearm "therefore[] is exempted by [MGL ch. 140,] § 131 from the prohibition in [MGL ch.] 269, § 10(a), against carrying a firearm without a license." Id. (emphasis added). In other words, it was MGL ch. 269, § 10(a) and 10(n)'s nexus to MGL ch. 140, § 131 -- and its resulting nexus to section 121's antique exemption -- that prompted the court to recognize an affirmative defense for antique firearms, not that section 121's definition of a firearm did not reach antiques or that the limited exemption somehow creates a wholesale antique exemption.

That nexus is lacking here. Unlike the criminal offenses in Jefferson, section 11C does not refer to any of the provisions enumerated in section 121's antique exemption. See MGL ch. 269, §§ 11A, 11C. Nor does section 11C deal with the licensing of firearms. Thus, the basis for finding the antique exemption applies -- some connection to one of the provisions enumerated in section 121's exemption -- simply is not present. Accordingly,

- 13 -

section 11C's reference to section 121 imports only the definition of a firearm, not the antique exemption.

What is more, Jefferson reinforces the broad reach of section 121's definition of firearm. Before recognizing an affirmative defense based on the relevant provisions' nexus to MGL ch. 140, § 131, the court first acknowledged that "[a] firearm manufactured before 1900 is a 'firearm' within the definition of [MGL ch.] 140, § 121." Jefferson, 965 N.E.2d at 808.

DHS encourages us to take a broader view of Jefferson, asserting that context and common sense led Massachusetts to recognize an antique firearms exemption and affirmative defense. And it argues that, taken together, section 11C's presumption that firearms have a serial number when manufactured and the lack of either a Massachusetts or federal law requiring firearms to bear a serial number until 1968 suggest that section 11C should not apply to antiques. Even assuming that Jefferson permits us to resort to such considerations, we disagree that context and common sense suggest that section 11C does not apply to antique firearms.

As an initial matter, DHS's assertion that section 11C presumes firearms have a serial number when manufactured rests on shaky ground. To support this assertion, DHS relies on a series of cases which suggest little evidence is required to establish the defacing or removal of a serial number. But even in those cases, the court required some evidence of defacing or removal of

- 14 -

the serial number. See Commonwealth v. Kante, 167 N.E.3d 892 (Mass. App. Ct. 2021) (unpublished table decision) (sustaining conviction where "slide had been machined by . . . some brushing type of tool" and "the serial number was obliterated, meaning, you could no longer see it" (alterations and internal quotation marks omitted)); Commonwealth v. Jones, 900 N.E.2d 535 (Mass. App. Ct. 2009) (unpublished table decision) (sustaining conviction where "serial number was scratched and 'pretty blurry'; there were 'markings';" and officer could not read the number); Commonwealth v. Pacheco, 28 N.E.3d 13 (Mass. App. Ct. 2015) (unpublished table decision) (sustaining conviction where officers testified that the "serial number had been 'altered' or 'scratched out'"); Commonwealth v. Grant, 783 N.E.2d 455, 460 (Mass. App. Ct. 2003) (sustaining conviction where defendant stated "that the serial number 'was already scratched off' when he purchased the firearm").

Admittedly, the burden to establish prima facie evidence of a violation of section 11C is not onerous. And it may be that the Commonwealth does not have to prove that a firearm had a serial number on it when it was manufactured. See Pacheco, 28 N.E.3d at 13 ("[P]ossession of a firearm from which the serial number has been removed or defaced is prima facie evidence of a violation of the statute, as it is presumed that a firearm has a serial number on it when it is manufactured."). But even if there were a presumption that a firearm has a serial number on it at the time

of manufacture, in our view, that says more about whether a defendant may avoid a conviction under section 11C by arguing that a specific weapon was manufactured without a serial number than whether section 11C imports section 121's antique weapons exemption.

The fact that neither Massachusetts nor federal law required all firearms to be manufactured with serial numbers until 1968 also does not persuade us. See Act of July 20, 1968, ch. 737, 1968 Mass. Acts 631-32 (adding MGL ch. 269, § 11E); Pub. L. No. 90-351, 82 Stat. 197, 231 (1968) (adding 18 U.S.C. § 922(i)). Just because the law did not require serial numbers before 1968 does not mean they did not exist before then. Even though Massachusetts and federal law did not legally require serial numbers on all firearms until 1968, Massachusetts criminalized the defacing and removal of serial numbers in 1937, suggesting that some manufacturers used serial numbers before 1968.[5] See Act of Apr. 13, 1937, ch. 199, 1937 Mass. Acts 170-71 (penalizing the removal and defacing of serial numbers of firearms as well as the knowing receipt of such firearms). And we know that some manufacturers

---

[5] Moreover, although serial numbers were not federally required for all firearms until 1968, federal law required a limited subset of firearms, such as machine guns and short-barreled rifles, to bear serial numbers beginning in 1934. See United States v. Price, No. 2:22-cr-00097, 2022 WL 6968457, at *5 (S.D.W. Va. Oct. 12, 2022) (citing National Firearms Act, Pub. L. No. 73-474, § 8(a), 48 Stat. 1236, 1239 (1934)).

did.  Indeed, some manufacturers started using serial numbers well before 1900.[6]  See, e.g., Thomas Henshaw, The History of Winchester Firearms 1866-1992, at ix (6th ed. 1993); Serialization, National Rifle Association, https://www.nramuseum.org/media/940941/serialization-date%20of%20manufacture.pdf (last visited May 26, 2023)  (noting some firearms with serial numbers dating back to the 1840's); Firearm Serial Numbers, Springfield Armory, National Park Service, https://www.nps.gov/spar/learn/historyculture/firearm-serial-numbers.htm (last visited May 26, 2023) (noting that firearms manufactured at Springfield Armory started receiving serial numbers in 1865).  Thus, we see no reason to read in an antique exemption where some antiques have serial numbers and Massachusetts began criminalizing the defacing of those manufacturer-stamped serial numbers in 1937.

Seeking a way around the 1937 criminalization of defacing and removal of serial numbers, DHS asks us to consider the broader context of Massachusetts's firearms law in 1937 and give some weight to Massachusetts's inclusion of an antique exemption since 1934.  That antique exemption bears similarities to the current exemption in section 121.  Compare Act of June 29,

---

[6] In fact, the serial number is how the defendant's expert in Jefferson purported to know that the firearm at issue in that case was manufactured in 1896.  965 N.E.2d at 808.

1934, ch. 359, 1934 Mass. Acts 496 ("[S]ections [122] to [129], inclusive, and section [10B] of chapter [269], shall not apply to antique firearms incapable of use as firearms."), with MGL ch. 140, § 121.

DHS, however, offers nothing more to suggest that Massachusetts historically applied the antique exemption to section 11C. And a review of the history of the antique exemption suggests the opposite. Three years before Massachusetts criminalized the defacing and removal of serial numbers, in 1934, it enacted a law requiring dealers to collect information about the delivery of firearms and criminalized the failure to do so as well as an individual's falsifying of such information. See Act of June 29, 1934, ch. 359, 1934 Mass. Acts 496-97 (adding MGL ch. 269, § 10B). At the same time, Massachusetts amended MGL ch. 140, § 121's antique exemption to indicate that the new provision did not apply to antiques. Id. at 496. That provision and section 121's antique exemption's reference to it remained in effect until 1957. See Act of Aug. 21, 1957, ch. 688, 1957 Mass. Acts 597-98 (removing MGL ch. 140, § 121's reference to MGL ch. 269, § 10B), 606 (repealing MGL ch. 269, § 10B). Yet, in 1937, when Massachusetts added section 11C, it did not amend section 121's exemption to include section 11C, suggesting that the exemption did not apply to section 11C. See Act of Apr. 13, 1937, ch. 199, 1937 Mass. Acts 170-71. So the existence of an antique

- 18 -

exemption that did not apply to section 11C in 1937 does little to help DHS demonstrate a similar antique exemption applies today.

In short, section 11C contains neither an explicit exemption for antique firearms nor an affirmative defense for antique firearms, and section 121's definition of firearm clearly reaches those firearms manufactured before 1899. Context and common sense do not convince us otherwise. Section 11C therefore is overbroad when compared to its federal counterpart.

## B. Realistic Probability Test

The BIA concluded that even if MGL ch. 269, § 11C "is overbroad because it does not contain an explicit antique firearm exception," Portillo still had not proven section 11C's overbreadth because he "ha[d] not established a realistic probability" that Massachusetts would apply section 11C to conduct involving antiques. It determined that Portillo needed to, but did not, identify an actual case in which Massachusetts applied section 11C to prosecute offenses involving an antique firearm. Portillo argues that the BIA's demand for an actual case conflicts

with our caselaw and that he need not produce an actual case given section 11C's facial overbreadth.[7]  We agree with Portillo.

This court has previously held that "where a statute is facially broader than its generic counterpart," an actual case is not required to satisfy the realistic probability test.  Da Graca, 23 F.4th at 113; see also Swaby v. Yates, 847 F.3d 62, 66 (1st Cir. 2017) (realistic probability test met where "[t]he state crime . . . clearly [] appl[ies] more broadly than the federally defined offense"); Whyte v. Lynch, 807 F.3d 463, 467-71 (1st Cir. 2015) (not requiring petitioner to point to an actual case where plain language of state statute was overbroad, state authority did not detract from plain language, and common sense suggested state could apply state statute in overbroad manner).  The BIA's determination to the contrary was error.

As we have explained before, the realistic probability test has its origins in Gonzales v. Duenas-Alvarez, 549 U.S. 183 (2007).  Da Graca, 23 F.4th at 113.  In Duenas-Alvarez, the Supreme Court cautioned that finding a state statute overbroad "requires more than the application of legal imagination to a state statute's

---

[7] Portillo concedes that he has not identified a case in which Massachusetts has prosecuted conduct involving an antique firearm under MGL ch. 269, § 11C.  And when we look at the seventy-four Massachusetts state court opinions on Westlaw that cite MGL ch. 269, § 11C, none concern convictions under MGL ch. 269, § 11C for conduct involving antiques.  But those cases also do not suggest that antique firearms are excluded from prosecution. Indeed, we see no discussions about the age of a firearm.

language.  It requires a realistic probability, not a theoretical possibility, that the [s]tate would apply its statute to conduct that falls outside" the federal offense.  549 U.S. at 193.

But we have not read Duenas-Alvarez's "sensible caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes" to require an actual case invariably.  Swaby, 847 F.3d at 66.  Instead, we have recognized that such caution "has no relevance" where "[t]he state crime at issue clearly does apply more broadly than the federally defined offense."  Id.  That is so because to require an actual case in such a scenario would say more about the state's prosecutorial decisions than the state statute's application.  See Da Graca, 23 F.4th at 113-14.

To the extent that DHS argues Moncrieffe nevertheless requires Portillo to unearth an actual case showing an actual conviction in Massachusetts under MGL ch. 269, § 11C for defacing an antique firearm, we disagree.  In Moncrieffe, the Supreme Court stated that "to defeat the categorical comparison" with a state firearms law lacking an exception for antique firearms, "a noncitizen would have to demonstrate that the [s]tate actually prosecutes the relevant offense in cases involving antique firearms."  569 U.S. at 206.

We do not read this Moncrieffe dictum to carve out a special actual case requirement for all categorical analyses that

implicate antique firearms. Moncrieffe's statement also stems from "Duenas-Alvarez['s] require[ment] that there be 'a realistic probability, not a theoretical possibility, that the [s]tate would apply its statute to conduct that falls outside the generic definition of a crime.'" Id. at 205-06 (quoting Duenas-Alvarez, 549 U.S. at 193). So that Moncrieffe dictum cannot require an actual case anymore than Duenas-Alvarez can. And as we explained at length above and in our prior cases, Duenas-Alvarez does not require an actual case in circumstances like those here.

We are not alone in concluding that Moncrieffe does not change the calculus of how to apply the categorical approach to firearms offenses. The Fourth Circuit concluded the same in Gordon v. Barr, 965 F.3d 252, 259-61 (4th Cir. 2020). In Gordon, the Fourth Circuit confronted a Virginia statute that prohibited the discharge of "any firearm" in a public place. Id. at 258-59. Based on the text of the statute, the Supreme Court of Virginia's pronouncement that the term "any firearm" included all firearms, and the legislature's decision to explicitly include antique exceptions for other statutes but not the one at issue, the Fourth Circuit concluded that the statute's prohibition against discharging a firearm reached antiques. Id. at 258-60. And, despite Moncrieffe's dictum, the Fourth Circuit did not require the noncitizen to then "'find a case' in which the state successfully prosecuted a defendant" for discharging an antique

- 22 -

firearm.  <u>Id.</u> at 260.  Instead, it reaffirmed that "when the state, through plain statutory language, has defined the reach of a state statute to include conduct that the federal offense does not, the categorical analysis is complete; there is no categorical match."  <u>Id.</u>; <u>see also</u> <u>Williams</u> v. <u>Barr</u>, 960 F.3d 68, 72 (2nd Cir. 2020) ("The 'realistic probability test' . . . has no role to play in the categorical analysis . . . when the state statute of conviction on its face reaches beyond the generic federal definition.").

Perhaps recognizing that our precedent does not always require a noncitizen to find an actual case to prove a categorical mismatch, DHS attempts to differentiate the present case from <u>Da Graca</u>, <u>Swaby</u>, <u>Whyte</u>, and <u>Gordon</u>, by asserting that those cases "involved clear textual or contextual clues" of overbreadth that are lacking here.  The BIA appears to have drawn a similar distinction in concluding its demand for an actual case did not conflict with our decision in <u>Whyte</u>.  It reasoned that whereas in <u>Whyte</u> "the state statute expressly proscribed conduct beyond the generic offense," here the state statute was "silent on whether it involves antique firearms" and state law permitted an affirmative defense of an antique firearm.

The problem for DHS is that we are not presented with a statutory scheme that lacks an exemption for antique firearms wholesale or where we are left to wonder whether a firearm, as defined in MGL ch. 140, § 121, encompasses an antique firearm.

The textual and contextual clues are clear. Massachusetts defines firearm to include antiques. See MGL ch. 140, § 121; Jefferson, 965 N.E.2d at 808 ("A firearm manufactured before 1900 is a 'firearm' within the definition of [MGL ch.] 140, § 121."). And it explicitly has an exemption for antiques. See MGL ch. 140, § 121. But by its own terms that exemption is limited and does not apply to MGL ch. 269, § 11C. Id. And Massachusetts caselaw interpreting the interplay between that exemption and Massachusetts criminal provisions does not suggest that the exemption applies. See Jefferson, 965 N.E.2d at 808. Rather, it reinforces that there is no basis to apply it here. Id.

Accordingly, without resorting to "legal imagination," we conclude that MGL ch. 269, § 11C sweeps more broadly than the federal offense, and Portillo need not produce an actual case to demonstrate that overbreadth.

### IV. Conclusion

For the reasons stated above, we grant the petition for review, vacate the BIA's opinion, and remand for further proceedings consistent with this decision.